| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| DBSI, INC., et al. ) | Case No. 08-12687(PJW) |
| ) | |
| Debtors. ) | Jointly Administered |
| _____ ) | |
| ) | |
| FEDERAL INSURANCE COMPANY, ) | |
| ) | |
| Interpleader-Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 09-52031(PJW) |
| ) | |
| DBSI, INC., et al., ) | |
| ) | |
| Interpleader-Defendants. ) | |

# MEMORANDUM OPINION

Jami B. Nimeroff
BROWN STONE NIMEROFF LLC
901 N. Market Street
Suite 1300
Wilmington, DE 19801

Monte N. Stewart
Craig G. Taylor
BELNAP STEWART TAYLOR &
MORRIS PLLC
12550 W. Explorer Drive
Suite 100
Boise, Idaho 83713

Counsel for Interpleader
Defendants John Mayeron,
Charles Hassard and Thomas
Var Reeve

Natasha M. Songonuga
GIBBONS P.C.
1000 N. West Street, Suite 1200
Wilmington, DE 19801-1058

Chad J. Toms
WHITEFORD TAYLOR PRESTON LLC
1220 N. Market Street
Suite 608
Wilmington, DE 19801

Franklin D. Cordell
Haley K. Krug
GORDON TILDEN THOMAS &
CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154

Attorneys for Defendant
Douglas L. Swenson

Donna L. Harris
Patricia R. Uhlenbrock
PINCKNEY HARRIS & WEIDINGER LLC
1220 North Market Street
Suite 950
Wilmington, DE 19801

Counsel to Walt Mott and
John D. Foster

Lan Hoang
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310

Counsel to Conrad Myers,
as trustee for the DBSI
Liquidating Trust

Jami B. Nimeroff
BROWN STONE NIMEROFF LLC
901 N. Market Street, Suite 1300
Wilmington, DE 19801

Curtis D. McKenzie
McKENZIE LAW OFFICES, PLLC
710 W. Franklin Road
Boise, Idaho 83702

Counsel for Jeremy Swenson,
David Swenson and Gary Bringhurst

Richard S. Cobb
J. Landon Ellis
Kimberly A. Brown
LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, DE 19801

Co-Counsel to Defendant
Farrell Bennett

Dated: July 22, 2011

**WALSH, J**. *[signature]*

This opinion is with respect to the motion of John Mayeron, Charles Hassard, and Thomas Var Reeve for Partial Summary Judgment Regarding Coverage Under the D&O Policy For Defense Costs Incurred in the RICO Action and the Avoidance Action. (Doc. # 303.) Douglas Swenson, Walter Mott, John Foster, Farrell Bennett, Jeremy Swenson, David Swenson, and Gary Bringhurst have all joined in this motion. (Doc. # 306, 308, 317, 319, and 320.) For the reasons discussed below, with one exception, I find that the motion should be granted.

## BACKGROUND

John Mayeron, Charles Hassard, Thomas Var Reeve, Douglas Swenson, Walter Mott, John Foster, Farrell Bennett, Jeremy Swenson, David Swenson, and Gary Bringhurst (together, the "Movants") are all former officers, directors and/or employees of DBSI, Inc. and related entities and subsidiaries ("DBSI").

DBSI filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on November 6, 2008. A plan of liquidation was confirmed on October 26, 2010, resulting in the appointment of James R. Zazzali as trustee ("Trustee") to administer the DBSI Estate Liquidation Trust.

Trustee commenced two actions on November 5, 2010. The first action, filed in the District Court for the District of Delaware, alleges violations of the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. (the "RICO Action," Case 1:10-cv-00950-LPS). (A. 189.[1]) The Movants are all named as defendants in the RICO Action. The second action, filed in this Court, seeks to avoid transfers made from DBSI to its alleged "Insiders" and to various taxing authorities on behalf of the Insiders (the "Avoidance Action," Adv. No. 10-54649). (A. 317.) Movants Mayeron, Hassard, Reeve, Douglas Swenson, Bennett, and Bringhurst are all defendants in the Avoidance Action.

Trustee has also commenced two avoidance actions in this Court against Mott and Foster individually, Zazzali v. Walter E. Mott, Adv. Proc. No. 10-51302, filed June 29, 2010, and Zazzali v. John Foster, Adv. Proc. No. 10-51309, filed June 30, 2010 (the "Mott and Foster Avoidance Actions," and together with the RICO Action and Avoidance Action, the "Actions").

Federal Insurance Company ("Federal") commenced this adversary proceeding on August 27, 2009 with its interpleader complaint (the "Interpleader Action"). Federal issued a directors' and officers' liability policy (the "D&O Policy") to DBSI with a policy limit of $5,500,000. Pursuant to Court order, Federal deposited its policy limit into the Court's registry. (Doc. # 51.)

Movants, as defendants in the Interpleader Action, have filed this motion for partial summary judgment that the D&O Policy covers their defense costs in the Actions. As this Court has

---

[1] Citations to the Appendix refer to Movant's Appendix. (Doc. # 305.)

previously found, the Movants are all Insured Persons under the D&O Policy. (Doc. # 160, 251, 253.) The question presented here is whether the D&O Policy covers the Actions, all of which were filed after the D&O policy coverage period.

## STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); IT Litig. Trust v. Alpha Analytical Labs, et al. (In re IT Group, Inc.), 331 B.R. 597, 600 (Bankr. D. Del. 2005). The Court must view all factual inferences "in the light most favorable to the nonmoving party." In re IT Group, 331 B.R. at 600 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–588 (1986)).

Movants bear the burden of showing there are no genuine issues of material fact that would preclude summary judgment. See Celotex, 477 U.S. at 323. Once Movants have met this burden, the burden shifts to the Trustee to show that a genuine issue of material fact exists. See In re IT Group, 331 B.R. at 600.

## DISCUSSION

The D&O Policy is a "claims-made" policy, meaning that it covers only claims made within the policy period, June 1, 2008 to June 1, 2010:

> THE LIABILITY COVERAGE SECTIONS . . . PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD.

(A. 6.)

The policy defines a "D&O Claim" as any of the following:

> (a) a written demand for monetary damages or non-monetary relief;
>
> (b) a civil proceeding commenced by the service of a complaint or similar pleading;
>
> (c) a criminal proceeding commenced by the return of an indictment; or
>
> (d) a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document.

(A. 35.)

The D&O Policy includes the following provisions concerning "Related Claims":

> All Related Claims will be treated as a single Claim made when the earliest of such Related Claims was first made . . . .

(A. 13.)

> Related Claims means all Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

(A. 10.)

The final relevant D&O Policy provision is the allocation provision, pursuant to which the policy covers defense costs incurred in defending even partially covered claims:

> If, in any Claim under a Liability Coverage Section, the Insureds who are afforded coverage for such Claim incur an amount consisting of both Loss that is covered by this Policy and also loss that is not covered by this Policy because such Claim includes both covered and uncovered matters or covered and uncovered parties, then coverage shall apply as follows:
>
> > (1) Defense Costs: one hundred percent (100%) of reasonable and necessary Defense Costs incurred by such Insured from such Claim will be considered covered Loss . . . .

(A. 15.)

The RICO and Avoidance Actions were commenced in November, 2010, five months after the policy period. The Mott and Foster Avoidance Actions were commenced at the end of June, 2010, also after the policy period. Movants contend that the policy covers the defense costs in the Actions because the Actions arise out of the same factual background as other claims that were made during the policy period (the "Covered Matters"), thus making them Related Claims. These Covered Matters include the following:

- FINRA Special Investigation # 20080154967 ("FINRA");

- Myles W. and Jannelle S. Spann Trust v. DBSI, Inc., et al., Case No. CV OC 0820435, District Court of the Fourth Judicial District of the State of Idaho ("Spann Trust");

- Murphy v. Rice, et al., Case No. 09-0485, FINRA Arbitration ("Murphy");

- Sorrentino Silver Lakes, LLC et al. v. Tobacco, et al., Case No. 09-04001, FINRA Arbitration ("Sorrentino");

- Floyd, et al. v. QA3 Financial Corp., et al., Case NO. 09-07264, FINRA Arbitration ("Floyd");

- Perego, et al. v. QA3 Financial Corp., et al., FINRA Arbitration ("Perego");

- Williams, et al. v. Inlet Securities, LLC, et al., FINRA Arbitration ("Williams");

- Hill, et al. v. Sauther, et al., Case No. 09-646, Montana First Judicial District Court ("Hill");

- Redding v. Janiak, et al., Case No. 09-649, Montana First Judicial District Court ("Redding");

- Bushman Investment Properties, Ltd. v. DBSI E-470 East LLC, et al., Case No. 1:09-cv-00674, D. Colo. ("Bushman");

- Douglas Swenson, et al. v. Bushman Investment Properties, Ltd., et al., Case No. 1:10-cv-00175, D. Colo. ("Bushman II");

- State of Idaho, Dep't of Finance, Securities Bureau v. Swenson, et al., Case No. CV-OC-0900859, District Court of the Fourth Judicial District of the State of Idaho ("Idaho");

- Zazzali v. Stellar Technologies LLC, et al., Adv. No. 09-52308 ("Zazzali").

The Movants were all named as defendants in at least one of the Covered Matters. Because these Covered Matters are "Claims" made within the policy period, Movants contend that the Actions, as Related Claims, are deemed to have been made within the policy period.

Trustee argues that the Actions are not "related" to the covered claims, as these Actions assert causes of action not asserted in any of the Covered Matters. Trustee also contends that the following provision in the D&O Policy specifically excludes any causes of action brought by an insured against another insured:

> No coverage will be available under this Coverage Section for any Claim against an Insured:
>
> ***

>> (5) brought or maintained by or on behalf of any
>> Insured in any capacity. . . .

(A. 38.) The Trustee asserts that, as successor entity of DBSI, he is a covered party and that the Movants are all covered parties; therefore, Trustee contends that this exclusion applies to the Actions brought by the Trustee against the Movants.

*Related Claims*

"Related Claims" provisions are typical in claims-made policies, and they serve the following purposes:

> (a) to allow insurers to confine related wrongful acts to a single policy period and, thereby, a single liability limit, and
>
> (b) to allow an insured to buy a new policy, despite facing additional liability exposure from its past acts, by having future related claims covered by the prior policy.

3 Insurance Claims and Disputes 5th § 11:5; see also In <u>G-1 Holdings, Inc. v. Reliance Ins. Co.</u>, 586 F.3d 247, 257-58 (3d Cir. 2009).

Claims are "related" if there is a logical or causal connection between them. <u>Fin. Mgmt. Advisors, LLC v. Am. Int'l Specialty Lines Ins. Co.</u>, 506 F.3d 922, 926 (9th Cir. 2007) (applying California law); <u>Continental Cas. Co. v. Wendt</u>, 205 F.3d 1258, 1263 (11th Cir. 2000) (applying Florida law to interpret a "related claims" provision); <u>Gregory v. Home Ins. Co.</u>, 876 F.2d 602, 606 (7th Cir. 1989) (applying Indiana law). Claims may be related even if they allege different types of causes of action and

arise from different acts. See Continental, 205 F.3d at 1264. The relevant inquiry is whether there is a "single course of conduct" that serves as the basis for the various causes of action. See id. (finding claims to be "related" when they were based on various acts motivated by a "single particular goal," even though the "acts resulted in a number of different harms to different persons, who may have different types of causes of action"); see also WFS Fin., Inc. v. Progressive Cas. Ins. Co., 232 Fed. Appx. 624, 625 (9th Cir. 2007) (holding that two suits arose from the same "facts, circumstances, situations, events or transactions" where they had a common basis, even though they were "filed by different sets of plaintiffs in two different fora under two different legal theories").

Trustee contends that the Actions are not related to the Covered Matters because they assert claims not made in any other proceeding. For instance, the RICO action is the only one alleging violations of the RICO Act, the Avoidance Action is the only one that makes claims concerning payments to various taxing authorities, and the Mott and Foster Avoidance Actions are the only ones concerning the specific transactions involving Mott and Foster. However, consistent with the reasoning in Continental, claims may be "related" even if they assert different legal claims based on different acts. The determination of whether the Actions

and Covered Matters are "related" depends on whether they assert causes of action based on the same course of conduct.

Movants have demonstrated that the RICO and Avoidance Actions do arise out of the same course of conduct as the Covered Matters. Concerning the RICO and Avoidance Actions, Movants have identified the following six courses of conduct that are shared with Covered Matters:

(1) Representations and Omissions Regarding and Use of Accountable Reserves;

(2) Representations and Omissions Regarding the DBSI Entities' Financial Condition;

(3) The Lack of Corporate Formalities Among the DBSI entities and the Status of the DBSI Entities as the "Alter Ego" of DBSI Insiders;

(4) Representations and Omissions in Private Placement Memoranda and Similar Offering Documents;

(5) Use of the Master Lease Agreement, Including Guaranty of Performance; and

(6) The Ponzi Scheme Nature of the DBSI Enterprise.

The appended charts provide citations to the complaints in each of the Actions and the Covered Matters, but the following summary suffices for this analysis:

- Misuse of accountable reserves: The RICO Action mentions this eleven times, the Avoidance Action mentions this conduct five times, and seven Covered Matters allege this course of conduct;

- Misrepresentations and omissions concerning the DBSI entities' financial condition: the RICO Action mentions this six times, the Avoidance Action mentions this ten times, and six Covered Matters allege this conduct;

- "Separateness" of DBSI Entities and their Status as the "Alter Ego" of DBSI Insiders: the RICO Action mentions this six times, the Avoidance Action mentions this five times, and two Covered Matters allege this course of conduct;

- Misrepresentations and omissions in Private Placement Memoranda and similar documents: the RICO Action mentions this three times, the Avoidance Action mentions this three times, and nine Covered Matters allege this course of conduct;

- Use of the Master Lease arrangement, including guaranty of performance: the RICO Action mentions this three times, the Avoidance Action mentions this three times, and six Covered Matters allege this course of conduct; and

- DBSI Enterprise as a "Ponzi" scheme: the RICO Action mentions this six times, the Avoidance Action mentions this five times, and one Covered Matter alleges this course of conduct.

These six examples demonstrate that the RICO Action, Avoidance Action, and the Covered Matters are "Related Claims" under the D&O Policy.

With respect to the Mott and Foster Avoidance Actions, however, Mott and Foster have failed to establish that these are Related Claims. Mott and Foster simply assert that their avoidance actions involve the same types of legal claims asserted in the Avoidance Action. (Doc. # 308, p.4.) This is insufficient to establish that these matters arise from the same or related facts, circumstances, situations, transactions or events. Accordingly, I will deny Mott and Foster's motion for partial summary judgment concerning the Mott and Foster Avoidance Actions.

*Exclusion*

Trustee contends that the D&O Policy's "insured v. insured" exclusion bars coverage. However, this exclusion does not

apply to "a D&O Claim brought against an Insured Person of the Parent Corporation by a bankruptcy trustee, receiver, creditors' committee, liquidator, conservator, rehabilitator or similar official who has been appointed to take control of, supervise, manage or liquidate the Parent Corporation." (A. 46.) The policy defines DBSI, Inc. as the Parent Corporation. (A. 6.) The policy identifies 19 subsidiaries (A.30), some of which appear to be the subject of the RICO and Avoidance Actions.

In the RICO Action the Trustee asserts that he is bringing the action on behalf of DBSI, Inc. and Debtor Entities. Debtor Entities is defined as "DBSI, Inc. and its direct and indirect debtor and non-debtor subsidiaries whose claims were assigned to the Estate Litigation Trust." (A. 191.) In the Avoidance Action, the Trustee is likewise pursuing claims on behalf of DBSI, Inc. and Debtor Entities (i.e., the direct and indirect debtor subsidiaries of DBSI, Inc.). Thus, pursuant to the Plan of Reorganization the parent and the subsidiaries have been bundled together and the Trustee is pursuing actions against insiders on behalf of the bundled estates. It is unclear how this exclusion, and its exception, apply in the context of the RICO and Avoidance Actions which are being brought on behalf of the Parent Corporation and subsidiaries. However, here the Movants are only seeking coverage for defense costs and pursuant to the policy's allocation provision, they are entitled to 100% of defense costs where the

claim is with respect to a covered matter and a non-covered matter.[2]

**CONCLUSION**

For the above reasons, the Motion for Partial Summary Judgment should be granted as to the RICO and Avoidance Actions.

I am not entering an order at this time because I am concerned that this Court's jurisdiction may be in question in light of the Supreme Court decision in <u>Stern v. Marshall</u>, 131 S.Ct. 2594 (2011). Before proceeding further with this matter, I am inviting the parties to file written submissions on whether <u>Stern v. Marshall</u> permits me to issue an order.

---

[2] There is an additional complication. While the policy identifies DBSI, Inc. as the Parent Corporation. (A. 6.) , the list of subsidiaries includes DBSI, Inc. fka DBSI Housing, Inc. (A. 30.)

**Appendix**

Chart 1
The RICO Action and the Covered Claims as Related Claims

| **The RICO Action** | **The Covered Claims** |
|---|---|
| Representations and omissions regarding and use of accountable reserves<br><br>A. 190, 194-195, 203, 205, 211, 221, 222, 234-247, 250, 251, 255-256 | Representations and omissions regarding and use of accountable reserves<br><br>Bushman, A. 587-591<br>FINRA Special Investigation, A. 101<br>Floyd, A. 158-160<br>Hill, A. 536, 538, 539-541<br>Perego, A. 170-172<br>Redding, A. 567<br>Williams, A. 182-183 |
| Representations and omissions regarding the DBSI entities' financial condition<br><br>A. 202-203, 211, 214, 231-247, 248, 256-259 | Representations and omissions regarding the DBSI entities' financial condition<br><br>FINRA Special Investigation, A. 101, 662-663<br>Floyd, A. 160<br>Hill, A. 539, 540, 541<br>Perego, A. 172<br>Redding, A. 566, 567<br>Williams, A. 184 |
| The "separateness" of DBSI entities and their status as the "alter ego" of DBSI "insiders"<br><br>A. 195, 203, 210, 213-216, 219, 221-222 | The "separateness" of DBSI entities and their status as the "alter ego" of DBSI "insiders"<br><br>Idaho, A. 623<br>Redding, A. 561, 568 |

| | |
|---|---|
| Alleged misrepresentations and omissions in Private Placement Memoranda and similar documents<br><br>A. 207, 224, 225-247 | Alleged misrepresentations and omissions in Private Placement Memoranda and similar documents<br><br>Bushman, A. 597-598<br>FINRA Special Investigation, A. 101<br>Floyd, A. 155<br>Hill, A. 533, 535, 537-540<br>Idaho, A. 621, 628-631<br>Perego, A. 172<br>Redding, A. 563, 564<br>Spann Trust, A. 104, 119-122<br>Williams, A. 184 |
| Use of the Master Lease arrangement, including guaranty of performance<br><br>A. 204-205, 212, 231-233 | Use of the Master Lease arrangement, including guaranty of performance<br><br>Floyd, A. 154<br>Hill, A. 531-532, 537<br>Idaho, A. 621, 625-626<br>Perego, A. 165<br>Redding, A. 562-563<br>Spann Trust, A. 104 |
| The DBSI enterprise as a "Ponzi" scheme<br><br>A. 194, 202, 206, 214, 226, 266-267 | The DBSI enterprise as a "Ponzi" scheme<br><br>Spann Trust, A. 104-106 |

Chart 2
The Avoidance Action and the Covered Claims as Related Claims

| **The Avoidance Action** | **The Covered Claims** |
|---|---|
| Representations and omissions regarding and use of accountable reserves<br><br>A. 348, 361-364, 366, 368, 370 | Representations and omissions regarding and use of accountable reserves<br><br>Bushman, A. 587-591<br>FINRA Special Investigation, A. 101<br>Floyd, A. 158-160<br>Hill, A. 536, 538, 539-541<br>Perego, A. 170-172<br>Redding, A. 567<br>Williams, A. 182-183 |
| Representations and omissions regarding the DBSI entities' financial condition<br><br>A. 329, 334-335, 338, 349-359, 360, 363, 367, 370, 373-375, 379-394 | Representations and omissions regarding the DBSI entities' financial condition<br><br>FINRA Special Investigation, A. 101, 662-663<br>Floyd, A. 160<br>Hill, A. 539, 540, 541<br>Perego, A. 172<br>Redding, A. 566, 567<br>Williams, A. 184 |
| The "separateness" of DBSI entities and their status as the "alter ego" of DBSI "insiders""<br><br>A. 328-329, 331, 337, 340-347, 368 | The "separateness" of DBSI entities and their status as the "alter ego" of DBSI "insiders""<br><br>Idaho, A. 623<br>Redding, A. 561, 568 |

| | |
|---|---|
| Alleged misrepresentations and omissions in Private Placement Memoranda and similar documents<br><br>A. 334-335, 349-357, 360-366 | Alleged misrepresentations and omissions in Private Placement Memoranda and similar documents<br><br>Bushman, A. 597-598<br>FINRA Special Investigation, A. 101<br>Floyd, A. 155<br>Hill, A. 533, 535, 537-540<br>Idaho, A. 621, 628-631<br>Perego, A. 172<br>Redding, A. 563, 564<br>Spann Trust, A. 104, 119-122<br>Williams, A. 184 |
| Use of the Master Lease arrangement, including guaranty of performance<br><br>A. 331-332, 339, 358-360 | Use of the Master Lease arrangement, including guaranty of performance<br><br>Floyd, A. 154<br>Hill, A. 531-532, 537<br>Idaho, A. 621, 625-626<br>Perego, A. 165<br>Redding, A. 562-563<br>Spann Trust, A. 104 |
| The DBSI enterprise as a "Ponzi" scheme<br><br>A. 328-329, 332, 334, 339-341, 350 | The DBSI enterprise as a "Ponzi" scheme<br><br>Spann Trust, A. 104-106 |